**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

LILIA BOGGS                                                                      CIVIL ACTION

VERSUS                                                                           17-336-SDD-EWD

TEXAS ROADHOUSE, INC. AND
TEXAS ROADHOUSE HOLDINGS, LLC

## RULING

This matter is before the Court on the *Motion for Summary Judgment*,[1] filed by Defendants Texas Roadhouse, Inc. and Texas Roadhouse Holdings, LLC ("Defendants"). Plaintiff, Lilia Boggs has filed an *Opposition*[2] to this motion, to which Defendants filed a *Reply*.[3] For the reasons which follow, Defendants' motion shall be DENIED.

**I.    BACKGROUND**

On May 21, 2016, Plaintiff had dinner with friends at the Texas Roadhouse restaurant in Slidell, Louisiana.[4] The Texas Roadhouse is a chain of family-friendly steak restaurants.[5] When a patron of Defendants' restaurant is identified as having a birthday, servers bring the "birthday saddle" to the table or booth so the birthday celebrant is recognized and/or photographed on the saddle.[6] At around 9:00 p.m. on May 21, as

---

[1] Rec. Doc. No. 19.
[2] Rec. Doc. No. 28.
[3] Rec. Doc. No. 31.
[4] Rec. Doc. No. 1, ¶ III.
[5] Rec. Doc. No. 19-2 at 13 (Deposition of Brittany Hamilton, p. 92).
[6] *Id.* at 14 (Deposition of Brittany Hamilton, p. 93).
47047

Plaintiff prepared to leave the restaurant, she made her way towards the restroom at the rear of the restaurant.[7] Plaintiff alleges that, on the way to the restroom, she approached a birthday celebration involving the "birthday saddle" in the main aisle located through the middle of the restaurant between the bar and a line of booths.[8] Plaintiff testified that she became aware of the birthday celebration when she heard the "hollering and screaming" by the five or six servers involved in the celebration.[9] Plaintiff claims that she waited for the celebration to end and then stepped through a narrow, one-foot passageway between the saddle and a barrel of peanuts. Plaintiff further claims the sole of her sandal became lodged under the base of the saddle's wooden frame causing her to trip and fall, striking her head and right arm on the ground.[10] As a result of this fall, Plaintiff contends she sustained injuries to her head and right arm and has incurred over $60,000 in medical costs for treatment of these injuries.

Plaintiff filed suit against Defendants pursuant to the Louisiana Liability Merchant Statute[11] to recover damages sustained as a result of this incident. Defendants have moved for summary judgment arguing that Plaintiff cannot carry her burden under this statute because the complained-of condition was open and obvious, and Defendants exercised reasonable care.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no

---

[7] Rec. Doc. No. 19-3 at 11-12 (Deposition of Lilia Boggs, pp. 37-38).
[8] *Id.* at 19 (Deposition of Lilia Boggs, p. 54).
[9] *Id.* at 13 (Deposition of Lilia Boggs, p. 46).
[10] *Id.* at 28 (Deposition of Lilia Boggs, p. 71).
[11] La. R.S. 9:2800.6.
47047

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'" However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" All reasonable factual inferences are drawn in favor of the nonmoving party. However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"

### B. The Louisiana Merchant Liability Statute - La. R.S. 9:2800.6

This matter is governed by the Louisiana Merchant Liability Statute,[12] which

---

[12] The matter is before the Court based on diversity of citizenship; thus, the Court must apply the substantive
47047

provides:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

In order to prove the Defendants' liability under Section A, Plaintiff must demonstrate that the Defendants failed to meet their duty to use "reasonable care to keep [its] aisles, passageways, and floors in a reasonably safe condition."[13] The duty imposed on a merchant under the statute "includes a reasonable effort to keep the premises free of any hazardous conditions which might reasonably give rise to damage."[14] However, a merchant "is not the insurer of the safety of his patrons ... [and] is not liable every time an

---

law of Louisiana to the facts of this case. In applying and interpreting Louisiana law, this Court looks to final decisions of the Louisiana Supreme Court for guidance under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[13] La. R.S. 9:2800.6(a).
[14] *Burnett v. M & E Food Mart, Inc.*, 2000–350 (La.App. 3 Cir. 11/15/00), 772 So.2d 393, 396 (quoting La.R.S. 9:2800.6(A)).
47047

accident happens."[15] In evaluating whether the effort taken to protect customers was reasonable, a court must look to the specific circumstances of each case and "the degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store and other relevant considerations."[16]

The determination of the unreasonableness of a risk is a mixed question of law and fact that is the proper province of the jury or finder of fact.[17] In determining whether a condition presented an unreasonable risk of harm, a fact finder should "balance the intended benefit of the thing with its potential for harm and the cost of prevention."[18] This requires the fact finder to "decide whether the social value and utility of the hazard outweigh[s] and thus justif[ies] its potential harm."[19]

The Louisiana Supreme Court addressed this issue in *Broussard v. State, Office of State Buildings*.[20] In *Broussard*, a UPS delivery driver sustained injuries when he admittedly and voluntarily chose to attempt to traverse a building's visibly misaligned elevators, while maneuvering a loaded dolly (weighing approximately three hundred pounds), by attempting to push the dolly over a one and one-half to three-inch elevation caused by the elevator's misalignment. After his attempt was unsuccessful, he turned around, stepped backwards into the elevator, and attempted to pull the dolly over the

---

[15] *Hardman v. Kroger Co.*, 34,250 (La.App. 2 Cir. 12/6/00), 775 So .2d 1093, 1095 (citing *Ward v. ITT Specialty Risk Services, Inc.*, 31,990 (La.App. 2 Cir. 6/16/99), 739 So.2d 251; *Tanner v. Brookshire Grocery Co.,* 29,276 (La.App. 2 Cir. 4/2/97), 691 So.2d 871).
[16] *Id.* at 1095.
[17] *Beckham v. Jungle Gym*, 45,325 (La.App. 2 Cir. 5/19/10), 37 So.3d 564, 568.
[18] *Watts v. Scottsdale Insurance Company*, 45,397 (La.App. 2 Cir. 6/30/10), 43 So.3d 266, 269 (citing *Pitre v. Louisiana Tech University*, 95–1466 (La.5/10/96), 673 So.2d 585).
[19] *Id.*
[20] 2012–1238 (La.4/5/13), 113 So.3d 175.

47047

elevation. "[T]he inertia created by the pull caused him to lose control of the load and forcefully pushed him into the back wall of the elevator," causing him to sustain a serious back injury.

Following a jury trial, the plaintiff was awarded approximately $1.5 million, subject to reduction by the 38% fault the jury assigned to the plaintiff.[21] The appellate court reversed, finding the jury's conclusion that the elevator offset created an unreasonable risk of harm to be erroneous on the basis that, because the defect was open and obvious, it did not present a serious risk of harm. In doing so, the appellate court noted that the plaintiff could have avoided his injuries by acting more reasonably under the circumstances.[22] The Louisiana Supreme Court reversed, holding:

> We have described the question of whether a defect presents an unreasonable risk of harm as "a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." *Reed v. Wal–Mart Stores, Inc.*, 97–1174, p. 4 (La.3/4/98), 708 So.2d 362, 364 (quoting *Tillman v. Johnson*, 612 So.2d 70 (La.1993) (per curiam)). As a mixed question of law and fact, it is the fact-finder's role—either the jury or the court in a bench trial—to determine whether a defect is unreasonably dangerous. Thus, whether a defect presents an unreasonable risk of harm is "a matter wed to the facts" and must be determined in light of facts and circumstances of each particular case. *E.g., Dupree v. City of New Orleans*, 99–3651, pp. 13–14 (La.8/31/00), 765 So.2d 1002, 1012 (citation omitted); Reed, 97–1174 at p. 4, 708 So.2d at 364.[23]

The *Broussard* court further stated: "It is axiomatic that the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact.[24] The judge decides the former, and the fact-finder—judge or

---

[21] *Id.* at 180–181.
[22] *Id.*
[23] *Id.* at 183-184.
[24] *Id.* at 185, citing *Brewer v. J.B. Hunt Transp., Inc.*, 09–1408, p. 14 (La.3/16/10), 35 So.3d 230, 240 (citing *Mundy v. Dep't of Health and Human Res.*, 620 So.2d 811, 813 (La.1993)).
47047

jury—decides the latter."[25] Ultimately, the Court concluded that, "while a defendant only has a duty to protect against unreasonable risks that are not obvious or apparent, the fact-finder, employing a risk-utility balancing test, determines which risks are unreasonable and whether those risks pose an open and obvious hazard. In other words, the fact-finder determines whether defendant has breached a duty to keep its property in a reasonably safe condition by failing to discover, obviate, or warn of a defect that presents an unreasonable risk of harm."[26]

Applying the foregoing law and jurisprudence to the facts of this case, the Court finds that genuine issues of material fact exist which preclude a summary judgment in this matter. While the Court recognizes its role to determine, as a matter of law, if the Defendants owed a duty, that question depends on a determination of whether the hazard in this case was "open and obvious," which is clearly a question for the jury. It is likewise the jury's role to determine whether the Defendants breached any duty to their patrons under the law by creating an "unreasonable risk of harm" in the manner in which the birthday saddle was used and positioned in the aisle of the restaurant.

Defendants contend that Plaintiff admitted in her deposition that she was not looking at the saddle's base;[27] therefore, she cannot contradict her sworn deposition testimony with an affidavit now claiming that she was looking where she was going. Defendants argue that, if Plaintiff was indeed looking where she was going, she would have seen the entire saddle and its base. While the Court agrees that a party cannot contradict sworn deposition testimony with a subsequent affidavit, the Court disagrees

---

[25] *Id.*
[26] *Id.*
[27] Rec. Doc. No. 19-3 at 41 (Deposition of Lilia Boggs, p. 90).
47047

with the suggestion that Plaintiff's affidavit is necessarily inconsistent with her deposition testimony. It is possible that Plaintiff was generally looking where she was going without noticing how far into the aisle the base of the saddle extended. Further, the Court finds that the issue of what Plaintiff was capable of seeing at the time and under the circumstances is more complex. It is disputed: (1) whether the lighting in the restaurant was sufficient; (2) whether Plaintiff entered the aisle before the birthday celebration had finished or after;[28] (3) whether Plaintiff saw or should have seen how far the base of the sawhorse extended into the aisle; and (4) whether Defendant's employees obstructed Plaintiff's ability to view the entire structure of the birthday saddle. The Court acknowledges that summary judgment is not always precluded when the open and obvious nature of a condition is at issue;[29] however, it is unacceptable when, as here, there are material issues of disputed fact regarding the open and obvious nature of the risk.

The Court notes the decision of the District Court for the Eastern District of Texas in *Lange v. Texas Roadhouse of Texarkana*.[30] In *Lange*, a patron of Texas Roadhouse sued after she fell on discarded peanut shells lying on the floor of the restaurant. Although this matter involved the premises liability law of Texas, Texas Roadhouse offered the same defense as in the case before the Court, arguing that it had no duty to warn of open, obvious, and unconcealed conditions.[31] The *Lange* court denied Texas Roadhouse's

---

[28] Defendants' employee Brittany Hamilton testified that Plaintiff entered the aisle 20 to 30 seconds into the approximately 2 minute long birthday celebration. Rec. Doc. No. 19-2 at 14. (Deposition of Brittany Hamilton, p. 93). Plaintiff testified that she was "waiting for them to finish" the birthday celebration before she proceeded to the restroom. Rec. Doc. No. 19-3 at 35 (Deposition of Lilia Boggs, p. 79).
[29] *See James v. Hilton New Orleans Corp.*, 2015 WL 4606060 at *4 (E.D. La. July 30, 2015).
[30] 2008 WL 11348432 (E.D. Tx. Sep. 24, 2008).
[31] *Id.* at *1.
47047

motion for summary judgment finding material issues of fact as to whether the peanut shells in the bar area were an open and obvious risk to the plaintiff, and found that Texas Roadhouse had "failed to convince the Court that it had no duty to warn under the circumstances of this case."[32] The Court finds that the same result is warranted here.

### III. CONCLUSION

For the foregoing reasons, the *Motion for Summary Judgment*[33] filed by Defendants is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on July 25, 2018.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[32] *Id.* at *7.
[33] Rec. Doc. No. 19.

47047